**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

REY F. ROBLES,

          **Plaintiff,**

v.                                      **Civil Action No. 2:19 cv 00111-MSD-**
**RJK**

UNITED STATES OF AMERICA,

          **Defendant.**

### PLAINTIFF'S REPLY TO UNITED STATES OF AMERICA'S OPPOSITION TO PLAINTIFF'S OBJECTIONS TO AUGUST 13, 2020 ORDER OF MAGISTRATE JUDGE LEONARD

Plaintiff, Rey F. Robles, by counsel, hereby submits his Reply to United States of America's opposition to Plaintiff's objections to the August 13, 2020 ruling of Magistrate Judge Lawrence Leonard granting Defendant United States of America's Motion *in Limine* Regarding the Expert Testimony of Capt. Reginald E. McKamie, Sr.   Plaintiff respectfully moves this Honorable Court for review and reconsideration of the Order of  the Magistrate Judge and requests that this Court vacate the order and allow the testimony of Capt. Reginald E. McKamie, Sr. to be presented at the trial of this matter.

### Standard of Review

Rule 72(a) of the Federal Rules of Civil Procedure allows a magistrate judge to hear and decide non-dispositive motions.  The same rule also authorizes a party to submit objections to a magistrate judge's ruling on non-dispositive matters, such as discovery matters. *Fed.R.Civ.P. 72(a)*.  Rule 72(a) also states in part, "*Nondispositive Matters - . . . The district*

judge in this case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*

A court's finding "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).  See also *Harman v. Levin*, 772 F.2d 1150, 1152 (4th Cir. 1985).  "Clearly erroneous" and "contrary to law" are not synonymous. *Bruce v. The Hartford*, 21 F.Supp.3d (2014) quoting *HSBC Bank v. Resh*, No. 3:12 – CV – 00668, 2014 WL 317820, at * (S.D.W.Va. Jan. 28, 2014).  For questions of law "there is no practical difference between review under rule 72 (a)'s contrary to law standard and a *de novo* standard. *Id.*

Most certainly, the district judge has the authority to review the magistrate judge's order upon review and consideration of the totality of the evidence and may modify or overrule all or any portion of the order. *Id.*

## Argument

### I.  The Magistrate Judge erred when he ruled Captain McKamie fails to identify the industry standard of care.

#### A.  The Reviewing Court May Look at the Totality of the Evidence.

The Magistrate Judge erred in his determination that Captain McKamie's report failed to set forth the applicable industry standard of care.  In support of Plaintiff's contention, he filed objections which included quoted portions of Capt. Reginald McKamie's Report.  He now attaches as **Exhibit 1** for the Court's review and consideration the entire report.  Also for

its review and consideration and for comparison, Plaintiff attaches defense expert Capt. Brian Hall's Report as **Exhibit 2**.

In the report, Captain McKamie specifically describes the standards of care below which the Defendant's Bosun's conduct fell and does so in far greater detail than Defendant's own expert in his. *Robles Obj.* at 13; *Hall Report*, Exh. 2. Defendant's own expert never stated or described the standard of care applicable to his opinions. *Hall Report, Exh. 2.* Defendant seeks to hold Plaintiff's expert to a standard higher than its own.

Defendant in its Opposition does not challenge Captain McKamie's qualifications to give opinions based upon lack of maritime expertise. At no point has Defendant ever attempted to undermine his maritime expertise or credentials. Given the fact he has nearly 50 years of maritime experience in vessel ship handling and operations, management, and marine safety training, Defendant would be unable to undermine his background and expertise. *McKamie c.v.,* **Exhibit 3**. Rather, Defendant's attacks have been confined to criticism of McKamie's writing and communication style. In short, Defendant criticizes, and the Magistrate Judge affirmed, Captain McKamie's description of the standard of care as being insufficiently clear and alleges his report does not describe the standard of care. Although his writing style may not be as clear as some, a review of the totality of McKamie's report reveals he does describe the standard of care and gives opinions that defendant breached the standard.

Having attached McKamie's report itself for the court's review and having previously briefed the matter extensively in Plaintiff's objections to Magistrate Leonard's order, Plaintiff will not belabor the point but will try to be succinct.

Captain McKamie describes the evidence in great detail and walked through his analysis of defendant's failures to meet the standards expected of a vessel owner or maritime employer.   Although Captain McKamie writes in a manner somewhat backwards, the statements are intended to convey both the standards of care and their breaches. For example, having described in narrative form that the bosun ordered Mr. Robles to lift garbage bags that Robles complained were too heavy for him even after Robles alerted the bosun he needed assistance to do the job, the Bosun failed to give him either mechanical or human assistance. McKamie Report, 3-5.  He then goes on to state

> by not properly supervising Mr. Robles, a fairly green deck sailor… The bosun violated several rules of Maersk Line, Limited and **violated maritime industry standards**, that are detailed in accident prevention on board ship at sea and import, <u>International Labor Office Geneva,</u> page 70 -71.

Captain McKamie then goes on to give a list of several things that he believes should have been done to meet the standard of care. By implication, doing those things constitutes the standard of care in the maritime industry as he understands it as a result of nearly 50 years of maritime experience. Although the standards may not have been as clearly stated as they may have been, a fair reading of the entire report reveals that those statements are the definitions of standards of care.   At the very least, they are implicit in the extensive text and detailed description of the facts and reasons for McKamie's opinions.

Capt. Brian Hall, Defendant's expert, seems to agree with McKamie's assertion the bosun was obligated to act upon Robles' report that the bags of trash were too heavy for him to handle alone. Captain Hall states in his report, "If Mr. Robles felt that the bags were too heavy, then he should have stopped lifting and notified the Bosun." (Hall Rpt. 6). There is no

further mention of this concept, no explicit reference to a foundation for his contention, and no explanation as to how his experience helped him formulate this opinion, as is true for his other assertions.  Capt. Hall clearly believes the industry standard is for a seaman to ask for help when lifting something he finds too heavy and for help to be given to him.  Although he never connects the two, Plaintiff assumes for purposes of this document Hall intends to corroborate this statement with the single source listed 15 paragraphs later, Standards for Training and Certification of Watchstanders, which is part of the International Safety Management Code of the International Maritime Organization, upon which McKamie also relies.  (Hall Rpt. 8).  At no point in Hall's report does he ever state specifically any standard of care. Defendant clearly holds the Plaintiff's Expert Witness' report to a standard drastically higher than its own.

Captain McKamie did indeed set forth the standards of care he reasonably believes were violated by the actions of defendant.  Even if the standards are not set out succinctly, the reviewing court, viewing the evidence and opinions as a whole, has the authority to determine the Magistrate Judge clearly erred in finding McKamie's opinions failed to satisfy the requirements of Rule 702.

> A court's finding "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

In this instance, a mistake has been committed.  It is clear from the Report and the evidence he describes in it that Captain McKamie knows and understands the standard of care and is attempting to describe them in the Report. This author had no question about the

meaning of Captain McKamie's Report.  The reviewing court can, and should, reach the same conclusion and set aside the magistrate judge's ruling excluding Captain McKamie's testimony on these points.

### B. The Magistrate Judge Erred in His Gatekeeping Role by excluding reliable testimony that should be admitted

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), the Supreme Court held that trial judges must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. Subsequent to Daubert, Rule 702 of the Federal Rules of Evidence was amended to provide that a witness "qualified as an expert… may testify… in the form of an opinion… if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

The Rule 702 and *Daubert* analysis applies to all expert testimony, including those with specialized knowledge."  *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). Furthermore, Courts must be flexible in their consideration of expert testimony.  The court in *Heller v. Shaw Industries, Inc*., 167 F.3d 146, 155 (3d Cir. 1999) stated it perfectly when it said "not only must each stage of the expert's testimony be reliable, but each stage must be evaluated practically and flexibly without bright-line exclusionary (or inclusionary) rules."  In addition, "[w]hether the testimony concerns economic principles, accounting standards, property valuation or other non-scientific subjects, it should be evaluated by reference to the 'knowledge and experience' of that particular field." American College of Trial

Lawyers, *Standards and Procedures for Determining the Admissibility of Expert Testimony after Daubert*, 157 F.R.D. 571, 579 (1994).

Concerning the court's role as a gatekeeper, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Adv. Comm. Notes (2000). *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversarial system." *Id.* (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996). *Daubert* itself emphasized that the factors were neither exclusive nor dispositive. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Witnesses may be qualified as experts if they possess "specialized knowledge, skill, experience, training, or education." *Fed. R. Evid.* 702.

Moreover, in satisfying its "gatekeeper" duty, the Court will look at the qualifications of the experts and the methodology used in reaching their opinions and will not attempt to determine the accuracy of the conclusion reached by the expert. The validity or correctness of the conclusions is for the fact finder to determine after the *Daubert* analysis. *Dean v. Sea Supply, supra.* The Dean court also went on to say objections of credibility and weight to be given to experts are questions best left to the trier of fact. *Id.*

The principles of the U.S. adversarial system listed above validate Plaintiff's statement that, "any questions about [McKamie's] sources of information go to the weight of his testimony rather than [admissibility]." (Robles Obj., Dkt. 37 at 18). Defendant's statement that part of the "gatekeeping responsibility" is to determine whether the testimony "rests on a

reliable foundation and is relevant to the task at hand," does not logically mandate that the Court strike all of Capt. McKamie's testimony simply because the Defendant claims not to understand the relevance of some references.

In maritime law issues of credibility and weight of evidence used to form an expert's opinion "are questions best left to the trier of fact." *Dean v. Sea Supply Inc.,* 2017 U.S. Dist. WL 3773149, at *5 (E.D. La. July 2017).  The court in *Dean* found references in the expert report to federal regulations and Coast Guard authorities as proper evidence of possible negligence despite the fact that the regulations at hand were not binding on Defendant. This case relied on additional maritime case law authority, *Melerine v. Avondale Shipyards, Inc.,* 659 F.2d 706, 713 n.22 (5th Cir. 1981) (allowing the expert's use of non-binding federal regulations as evidence of negligence for the trier of fact to evaluate), and *Jones v. Spentonbush-Red Star Co*, 155 F.3d 587, 596 (2d Cir. 1998) (allowing an expert's use of non-binding OSHA violations as admissible evidence of negligence).

It is with this overlay of principles this court must consider the underlying opinions of the Magistrate Judge to which Plaintiff objects.  The United States Supreme Court made it clear exclusion of expert testimony should be the exception rather than the rule.

### C.  The Magistrate Judge erred when he ruled Capt. McKamie failed to opine that the cited authorities establish industry standard of care.

The Magistrate Judge's decision to exclude McKamie's testimony based on the premise that McKamie failed to opine the "authorities establish the industry standard of care relevant to this case" is clearly erroneous on its face.  In his report, Capt. McKamie stated he relied on the sources he listed to form his opinions and clearly stated that he intended for his opinions

to state whether the treatment of Mr. Robles fell below industry standards for a merchant vessel.  Moreover, in the Report, Capt. McKamie clearly referenced particular authorities, some with specificity, some more generally, as being authoritative and citing to them to show Defendant's conduct fell below the expected standard of care.  Lastly, he explained in great detail his own relevant experience and qualifications in the maritime industry that make it crystal clear that experience and the qualifications are relevant to the field and are exactly the type of qualifications that assure assistance to the fact finder in this case.  Many customs and practices in the industry are not codified but still are generally accepted standards one learns through education, knowledge and experience in the field.  *SCF Waxler Marine LLC v. Aris T M/V, et al.*,  427 F. Supp. 728 (2019)( holding the standard of care, or duty, is a question of law that is established by statutes, rules, regulations, maritime custom, or general principles of negligence law and also citing *S.C. Loveland, In c. v. East West Towing, Inc.*, 608 F.2d 160, 165 (5th Cir. 1979) (citing *Pennsylvania R.R. Co. v. S.S. Marie Leonhardt*, 202 F. Supp. 368, 375 (E.D. Pa. 1962)); *see also Targa Midstream Servs. Ltd. P'ship v. K-Sea Transp. Partners, L.P.*, 527 F. Supp. 2d 598 (S.D. Tex. 2007.))   Capt. McKamie has demonstrated relevant experience from which he can draw to render his opinions.

The Magistrate Judge's decision to exclude McKamie's testimony was based on the Magistrate Judge's presumption that the references McKamie used render McKamie's opinions unreliable.  The decision is contrary to law.  He specifically referenced two of Capt. McKamie's sources which are international sources internationally recognized as good examples of industry standards and generally codifying or explaining the standards agreed upon by the international maritime community.  U.S. representatives helped write some of the

standards as explained in Plaintiff's Objections.  If questioned on cross examination or upon the questioning of the fact finder, McKamie will give more detail about the relevance of the authorities.

As stated above, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Adv. Comm. Notes (2000).  *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversarial system." *Id.* (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996).  *Daubert* itself emphasized that the factors were neither exclusive nor dispositive.  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.  Witnesses may be qualified as experts if they possess "specialized knowledge, skill, experience, training, or education." *Fed. R. Evid.* 702.

Furthermore, whether the resources and authorities named by the expert are authoritative has simply not been tested in this case because Defendant did not take his deposition and ask the questions.  The Court only presumed the authority was not sufficient when in fact Capt. McKamie relied upon them in other cases, including one against the United States in this very court.  *Teri Gray v. United States of America*, Civil Case No.: 4:15cv133.

As established by federal statute and maritime case law, appropriate evidence of sea-going industry standards of care need not be legally binding; the standards also include relevant international standards, and determining the weight of that evidence belongs most appropriately with the trier of fact. *Dean, Melerine and Jones, supra*.

In fact, courts routinely allow testimony of expert witnesses on the subject of industry standards.  See, *Ponds, et al., v. Force Corp*., 2016 WL 7178483 (USDC E.D. LA, Dec. 8, 2016).(holding an expert may properly testify about a statute or regulation as evidence of a defendant's negligence even when that statute or regulation cannot be used to establish negligence although the expert was not permitted to offer a legal opinion or impermissible legal conclusion.); *Ryan v. National Union Fire Insurance Company of Pittsburgh,* 210 WL 786-3486 (USDC, D. Connecticut, 2010)( allowing testimony about industry standards based on witness' years of experience and noting defendant's objections go to the weight of the testimony, not reliability.)

In sum, Capt. McKamie in his report relied upon authorities that he himself has used in his career as a basis for teaching others the standards of conduct and care expected to conduct a safe workplace.  At the heart of each of them are the international safety standards also relied upon by Defendant's own expert, ultimately adopted by and codified by Defendant United States of America. [1] Despite the Defendant taking issue with re-assertion of Plaintiff's arguments from his original Memorandum in Opposition to Defendant's motion *in limine*, it also takes issue with the explanation of McKamie's choice of authorities, which Defendant alleges is a "new" argument, thereby implying Plaintiff cannot properly make either old or new arguments.  Nevertheless, rather than repeat the information, Plaintiff incorporates the explanation set out in the Opposition Brief.

---

[1] This information is provided in Plaintiff's Opposition Brief, Dkt. 37, pp. 13-18.

For the sake of clarity, we restate our contention that both International Standards and the safety handbook constitute evidence of the industry standard of care. (our brief in opposition, segment on the CFR).

Despite the Defendant's claim, Virginia law in not in accordance with maritime law on the point of whether a vessel's safety manual - mischaracterized by Defendant as "private rules" - is relevant to a determination of ordinary care.  Defendant relies on *Harrison v. Seariver* to prove that a safety manual "does not . . . establish a legal duty."  Defendant cites only a portion of the holding, intentionally omitting language that has a bearing on the admissibility of McKamie's testimony. (*Harrison v. Seariver Mar., Inc.*, 2003 U.S. App. LEXIS 2472, at *17 (5th Cir. Jan. 28 2003). The very next line in Defendant's cited opinion states as follows

> . . .*on the other hand*, Seariver's failure to abide by its safety regulations (*e.g.* its failure to perform a JHA[2] where one was required), would be *relevant* in determining whether the vessel owner or its employees failed to exercise ordinary care. Id. at 17.

The next three lengthy paragraphs discuss in detail whether based upon witness testimony the JHA likely occurred; whether the JHA as it likely occurred complied with the vessel's safety manual; and whether, in light of the applicable safety manual, the task was routine.  To dismiss the relevance of the safety manual and testimony relating to it in establishing the industry standard of care or what conduct constituted ordinary care under the circumstances wholly mischaracterizes the holding.  The court actually held that while a safety manual does not in and of itself establish a legal duty, the safety manual was <u>highly relevant</u>

---

[2] JHA means "job hazard analysis."

to determining whether *Seariver* or its agents acted with ordinary care.  The Court admitted testimony about the safety manual for that purpose.

Additionally, in *Dean v. Sea Supply Inc., supra,* testimony concerning not only the defendant's own safety manual but also safety manuals of other competing companies was allowed by the testifying expert.

We find this rationale additionally refutes the Defendant's later contention with respect to the evidentiary value of whether a Job Hazard Analysis was conducted. (Def. Resp.) *Id.* at *3-4.

Defendant's reliance on *Gauthreaux v. United States*, 712 F. Supp. 2d 458, 465 (E.D. Va. 2010) is misplaced.  This case incorrectly relied solely on Virginia law to hold that the vessel involved could establish rules for the safe conduct of its sailors, but those rules could *not* be used as evidence. *Id.*  Not only does that directly contradict the above case cited by the Defendant, closer examination of *Gauthreaux* clearly establishes that the Court inexplicably relied on Virginia state case law and failed to consider maritime law in its analysis.  Although the case was brought as a 905(b) third party maritime negligence case under general maritime law, not one maritime case was cited in support of the proposition stated.  *Id.*  The bodies of state law included a products liability case, a case involving a internal rules relating to a streetcar company, a slip and fall claim against Walmart wanting to use rules for its employees, and an action against Virginia DOT for a vehicular accident involving one of their trucks. *Id.*  Not one of the internal "private rules" at issue in the case was mandated by international and U.S. regulatory or statutory law.

S set forth in great detail in plaintiff's objections, the International Safety Management Code and United States law requires vessels to have safety manuals and a safety management system.  As such, safety manuals are viewed differently in a maritime context and, as shown by cases above, safety manuals are often admitted into evidence at trial on the issue of ordinary care. Because the case is a gross misstatement of maritime standards, this court should give it no or little weight.

The Magistrate Judge erred in his determination that Captain McKamie's report failed to set forth the applicable industry standard of care.  To the contrary, Captain McKamie specifically describes the standards of care below which the Defendant's Bosun's conduct fell.

## II.     The Magistrate Judge erred when he ruled Captain McKamie's opinions are unhelpful and unreliable

Capt. Reginald McKamie's opinions are reliable and will be helpful to the trier of fact. When the Magistrate Judge imposed a requirement that Capt. McKamie explicitly "connect his experience to the formulation of an industry standard," (Def. Resp.) the requirement was too stringent a standard, contrary to law and, thus, clearly erroneous.  Rule 702 commentary states that, "*Daubert* itself emphasized that the factors were neither exclusive nor dispositive. The commentary further references *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 155 (3d Cir. 1999), stating that "not only must each stage of the expert's testimony be reliable, but each stage must be evaluated practically and flexibly without bright-line exclusionary (or inclusionary) rules."

A Coast Guard qualified ship's captain, with nearly a half-century of maritime experience, providing testimony as to the providence of a Bosun's orders or to the industry standard for the vessel's treatment of an injured seaman is not remotely comparable to the underlying facts that existed in *United States v. Frazier*, 387 F. 3d 1244 (11th Cir. 2012), the authority provided by Magistrate Judge's order.  *Frazier* involved a criminal rape case where a former police officer's experience as an investigator rendered no discernible foundation for him to claim, without any reference to available peer-reviewed scientific data, that there was "no forensic evidence to substantiate the claim of rape in this case." *Id.* at 1252.  Plaintiff acknowledges that if the connection between Capt. McKamie's experience and the content of his opinions did not perfectly overlap (as in *Frazier*, where the expert acknowledged that he had "no training in performing medical examinations generally, or, specifically . . . [and] conceded that he had no education, training as a doctor") or if Capt. McKamie ignored available scientific data (as in *Frazier*, where the excluded expert asserted that "no one ever studied" the rates of hair evidence transfer when there were in fact multiple important studies to that effect), then the above quoted standard may apply  *Id*. at 1252-1258.

Those are not the circumstances existing in this action.  Capt. McKamie's education, knowledge and experience do perfectly overlap.   There is no risk whatsoever that the trier of fact cannot adequately discern how the experience of a ship's Captain connects to his formulation of the industry standard of care, conduct and work aboard a ship.  Furthermore, Capt. McKamie did not ignore scientific studies, did not assert facts or figures in a deceptive or confusing way, nor did he attempt to render an opinion in an area not fully under the umbrella of his expertise.  Plaintiff trusts that the trier of fact needs no further protection from

unreliable expert testimony, and therefore finds the Magistrate Judge's exclusion of the testimony based upon the strict standard that the testimony explicitly detail each logical connection between experience, reference, and standard for each opinion rendered as "clearly erroneous." The *Frazier* case simply has no application to the standards that govern this action.

Plaintiff likewise distinguishes Defendant's use of *United v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007). While *United v. Wilson* does include the quote cited in Defendant's Opposition referencing the requirement that an expert witness "explain how [his] experience leads to the conclusion reached," the opinion also cites to FRCP Committee notes that specifically consider testimony by a law enforcement agent concerning the use of code words in drug transactions. *Id* at 275. The relevant note states that in these cases "the method used by the agent is the application of *extensive experience* to analyze the meaning of the conversations." *Id*.

Significantly, Defendant failed to point out that *United v. Wilson* actually continues its analysis and holds that an expert's extensive experience qualifies the expert to testify as an expert based on "specialized knowledge," and admitted the testimony of an expert based upon his self-described methodology, "I … take everything that I have, my knowledge, the situation, and that's how I form my opinion." *Id*

Similarly, Capt. McKamie's testimony would be properly admitted and it was clear error for the Magistrate Judge to exclude it. In addition to other resources, Capt. McKamie specifically states in the report several times that he relies on his education, knowledge and experience in rendering the opinions set forth in his Report. On page 2 of the Report, he cites an entire section entitled "RELEVANT EXPERIENCE" as follows:

Shipboard experience on various merchant and Navy vessels, including oil tankers, LNG tankers, cargo, passenger, LASH, Ro-Ro, container, tugs, pleasure craft and landing craft. Command at Sea experience. Training received at the US Merchant Marine Academy, Kings pointe, New York and in various ship handling classes at Marine Safety International and SOGREAH Ship Handling in Grenoble, France. Compliance coordinator, Pilot Board Investigation Review Committee "PBIRC." Houston Pilot Commissioners, 1991 through 2010. Coordinated investigations for pilot compliance with rules and laws for Houston Port Commission. Member, Maritime Transportation Board, National Academy of Sciences, Washington DC, nationally recognized panel of marine experts passed with advising Congress and other government organizations with advice regarding the Marine transportation system. Member, National Safety Advisory Committee, Department of Transportation, Washington, DC., Nationally recognized panel of marine experts appointed by the United States Sec. of Transportation to advise the United States Coast Guard Commandant on issues of marine safety. Presently, Commissioner Board of Houston Pilot Board, appointed by the City of Houston mayor and confirmed by the City Council of Houston, Texas. 49 years of experience in the US merchant marine industry.

Exh. 1 at 2.

On page 4 he states "based upon reasonable maritime industry standards, my experience, education and training . . .)  and on page 5 (same as page 4 plus the following paragraph

In addition to the sources cited above, my opinions are based upon over 49 years in the maritime industry, my experience, which includes service on Navy vessels, maritime human resource management experience as the Assistant Fleet Manning Supervisor for a fleet of 20 ships with 1000 seagoing personnel, and services in Navy ship handling instructor as well as commanded sea of merchant ships, education and training, standard operating procedures used on a daily basis by mariners in the maritime industry and seamanship practices deemed appropriate by maritime treatises or laws. . . . I am a licensed Master Mariner, Any Tonnage, Any Ocean.

The magistrate judge's finding that Captain McKamie must explicitly explain how his experience leads to the conclusion is therefore contrary to law.

As previously discussed, Plaintiff does not contend that a JSA, JHA, or the safety manual establish a legal duty.  Nor does Capt. McKamie allege that retaliation after the fact caused the Plaintiff's injury.  Instead, in addition to the other resources he cites in the Report, Capt. McKamie relies on his experience and the policy set forth in Maersk's own safety regulation (required by federal law)  to assert that not conducting the JSA (or JHA) in accordance with the safety manual, and treating an injured sailor in a retaliatory manner in the midst of their recovery, fell below the industry standards of care.

That conduct is relevant to Robles' claims, including his damages claim, because the Bosun's mistreatment of Robles continued after he was injured.  The Bosun failed to provide him with light duty when he needed it, failed to acknowledge his physical limitations that had resulted from the injury aboard the ship, and emotionally abused him as a result.  The Bosun retaliated against him for the fact of his injury and inability to perform full duty.  It is well-established a vessel owner/maritime employer has a duty to a Mariner to provide adequate cure. *The Osceola*, 189 U.S. 158, 2000 AMC 1207 (1903) stated "that the vessel and her owners are liable, in cases seaman fall sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued."

 As general maritime law and the Jones Act both consider duties beyond the precise moment of the injury itself, such observations and related opinions fall well within the relevance of Capt. McKamie's role.  Furthermore, as an experienced sea-going Captain, Capt. McKamie is more than qualified to apply his experience to testify as an expert based on "specialized knowledge" to form an opinion.  As someone who ordered seaman to conduct

JSAs, as someone who has done extensive safety training of personnel, as someone who managed Bosuns and deck seaman, as someone who managed waste on long periods at sea, there is nothing speculative about a ship's Captain recognizing the inherent danger in not conducting a JSA and declining to listen to a seaman when he informs him a task is too much for him, to include foreseeing the likely result of injury.  To decide otherwise is clearly erroneous.  As someone who cared for and ensured the proper treatment of injured Seaman, there is nothing speculative about Capt. McKamie recognizing that retaliatory and threatening treatment fell below the industry standard of care and likely negatively affected Mr. Robles' recovery. The assertions that Capt. McKamie's opinions are generally speculative are clearly erroneous.

Plaintiff asks the court to consider a portion of the commentary for Rule 702 not quoted by Defendant.  The section states that "an intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge."   Although tangential to its substantive argument, Defendant once again piles on to repeated mischaracterizations of the task at hand.  Despite clear testimony to the contrary, Defendant continues to describe the mechanism of injury as "moving paper trash".  (Def. Resp. 9).  Overwhelming evidence from all witnesses is consistent with that of Mr. Robles – that the bags of garbage he was tasked with repeated lifting and carrying on the day he was hurt were filled with trash of all kinds, including metal plate. Mr. Robles was seriously injured in a way that changed his life forever.

Writing standards aside, Plaintiff deserves the consideration of an expert willing and able to provide testimony with respect to operations of this nature and the conduct of managers

and Seaman aboard these vessels.  Maritime safety is a specialized area.  Although Defendant's expert specifically tailored his opinions under the Defendant's assumption that the bags at issue consisted of only paper trash, he still clearly states that a single trash bag can weigh more than 40 pounds, can include materials other than paper, and that a Seaman may ask for assistance regardless of the weight of the bag if they feel the task is too difficult.  (Hall Rpt. 6-8).  Defendant's submissions to this court make it clear that Mr. Robles will need a maritime expert to defend against willful mischaracterizations to the contrary.

Lastly, the Court is the trier of fact in this case and is perfectly capable of listening to the testimony of this maritime expert and evaluating the weight and credibility of the evidence after listening to direct and cross examination.

## <u>Conclusion</u>

For all the reasons set forth above as well as those provided in other memoranda provided by Plaintiff, the court should hold (1) Capt. McKamie sufficiently identified the standards of care he believes were applicable to the facts and circumstances of this action; (2) Capt. McKamie's opinions are and his testimony will be reliable.

A court's finding "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. United States Gypsum Co., supra*.  For all the foregoing reasons, the Court viewing the entirety of the evidence should determine that a mistake was made when the Magistrate Judge declared Capt. McKamie's testimony shall be excluded from evidence at trial.

Plaintiff asks the court to declare the decisions of Magistrate Judge Leonard clearly erroneous and contrary to law, set aside those portions of the order objected to by Plaintiff Rey F. Robles, and allow the testimony of Capt. Reginald E. McKamie, Sr. to be presented at the trial of this matter.

**REY F. ROBLES**

By: /s/Deborah C. Waters
Deborah C. Waters, Esquire
VSB No. 28913
Waters Law Firm, P.C.
Town Point Center, Suite 600
Norfolk, Virginia 23510
Telephone: 757-446-1434
Facsimile: 757-446-1438
Email: dwaters@waterslawva.com

Ralph Rabinowitz, Esquire
Ralph Rabinowitz, Attorney at Law, PLLC
Virginia State Bar #04281
Town Point Center, Suite 200
150 Boush Street
Norfolk, VA  23510
757-622-3931 *Telephone*
757-622-2194 *Facsimile*
rrab@rrablaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2020, a true copy of the foregoing pleading was

filed with the Clerk for service upon all counsel of record via the ECF system:

John E. Holloway, Esq. (VSB No. 28145)
Daniel T. Berger, Esq. (VSB No. 81861)
Ryan T. Gibson, Esq. (VSB No. 83183)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: 757-687-7724
Facsimile: 757-687-7510
Email: john.holloway@troutman.com
Email: daniel.berger@troutman.com
Email: ryan.gibson@troutman.com

JOSEPH H. HUNT
Assistant Attorney General
Civil Division
G. ZACHARY TERWILLIGER
United States Attorney
JOEL E. WILSON (VSB No. 71701)
Assistant U.S. Attorney
United States Attorney Office - Norfolk
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510-1671
Office: (757) 441-6331
Fax: (757) 441-6689
E-Mail: joel.wilson@usdoj.gov

MICHELLE T. DELEMARRE
Senior Admiralty Counsel
United States Department of Justice
Torts Branch, Civil Division
175 N. Street, NE, Room 8.133
Washington, DC 20002
Tel: (202) 616-4037
Fax: (202) 616-4002
E-Mail: Michelle.Delemarre@usdoj.gov

By:   /s/ Deborah C. Waters
Deborah C. Waters, Esquire
VSB No. 28913
Waters Law Firm, P.C.
Town Point Center, Suite 600
150 Boush Street
Norfolk, Virginia 23510
Telephone:  757-446-1438
Facsimile:  757-446-1438
dwaters@waterslawva.com